IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>vs.<br><br>DALLAS LAWRENCE,<br><br>Defendant/Movant. | Cause No. CR 14-072-GF-BMM<br>CV 17-101-GF-BMM<br><br>ORDER DENYING § 2255 MOTION AND DENYING CERTIFICATE OF APPEALABILITY |

This case comes before the Court on Defendant/Movant Dallas Lawrence's motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. Lawrence is a federal prisoner proceeding pro se.

**I. Preliminary Review**

Before the United States is required to respond, the Court must determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts. A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolas*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). The Court should "eliminate the

1

burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

## II. Background

A grand jury indicted Lawrence on September 4, 2014, charging him with one count of strangulation, a violation of 18 U.S.C. § 113(a)(8) (Count 1), and one count of assault with intent to commit murder, a violation of 18 U.S.C. § 113(a)(1) (Count 2), both committed "on or about May 2014."

The grand jury handed down a superseding indictment on October 20, 2014. Counts 1 and 2 remained the same. The grand jury charged another count of strangulation and another count of assault with intent to commit murder, this time "on or about March 2014," Superseding Indictment (Doc. 23) at 3 (Counts 3 and 4). The grand jury added a count of assault with a dangerous weapon and with intent to do bodily harm in violation of 18 U.S.C. § 113(a)(3) (Count 5). *Id.* at 4. The grand jury also added two counts of aggravated sexual abuse in violation of 18 U.S.C. § 2241(a)(1) (Counts 6 and 7), both committed "on or about early summer 2014." *Id.* The Major Crimes Act, 18 U.S.C. § 1153(a), provided jurisdiction for all counts. *See id.* at 1-2 (caption).

Jury trial commenced on January 26, 2015. After deliberating for about two

and a half hours on January 28, 2015, the jury returned guilty verdicts on each count. *See* Minutes (Docs. 73, 76, 77); Verdict (Doc. 84).

The U.S. Probation Office prepared a presentence report. Under the rules pertinent to grouping of counts, *see* U.S.S.G. § 3D1.1(a), the total offense level was 40. Lawrence previously had been convicted of two crimes of violence and qualified as a career offender. Even without career offender designation, however, the advisory guideline range would have remained 360 months to life in prison. *See* Presentence Report ¶¶ 68, 77-78, 138; U.S.S.G. ch. 5 Part A (Sentencing Table). The United States sought a sentence of life in prison. *See* U.S. Sent. Mem. (Doc. 93) at 2, 7. Counsel for Lawrence disputed the career offender designation and also sought a downward variance to 240 months. *See* Def. Resp. (Doc. 98) at 11.

The Court determined that Lawrence qualified as a career offender under the guidelines, *see* Sentencing Tr. (Doc. 120) at 7:9-14. The Court also determined, however, that the career offender designation overstated Lawrence's criminal history. The Court varied downward from the advisory guideline range to achieve the objectives of 18 U.S.C. § 3553(a). The Court sentenced Lawrence to a total term of 240 months in prison to be followed by a five-year term of supervised release. *See* Minutes (Doc. 100); Judgment (Doc. 102) at 2-3; Statement of Reasons (Doc. 103) at 3.

Lawrence appealed. He challenged the sufficiency of the evidence to support conviction on each count. He also challenged the sufficiency of the superseding indictment. The Ninth Circuit affirmed on May 11, 2016. *See* Mem. (Doc. 115) at 1-4, *United States v. Lawrence*, No. 15-30122 (9th Cir. May 11, 2016).

Lawrence filed a petition for writ of *certiorari* in the Supreme Court. The Supreme Court denied the petition on October 3, 2016. *See* Clerk Letter (Doc. 118) at 1.

Lawrence's conviction became final on October 3, 2016. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). He timely filed his § 2255 motion on September 18, 2017. *See* 28 U.S.C. § 2255(f)(1); *Houston v. Lack*, 487 U.S. 266, 276 (1988); Br. in Supp. (Doc. 122) at 42.

### III. Claims and Analysis

Lawrence claims that counsel provided ineffective assistance in various respects at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *See also Smith v. Robbins*, 528 U.S. 259, 285 (2000).

Lawrence mistakenly states that he is "required to make an offer of proof and facts to support" his allegations. *See, e.g.*, Mot. for Discovery (Doc. 121-2) at 3 ¶ 5, 4 ¶ 13 (Lawrence Decl.). At this stage of the proceedings, the Court assumes as true the facts that Lawrence alleges. His allegations simply must support an

4

inference (1) that counsel's performance fell outside the wide range of reasonable professional assistance, *id.* at 687-88, and (2) that there exists a reasonable probability that, but for counsel's unprofessional performance, the result of the proceeding would have been different. *Id.* at 694.

Lawrence also moved for leave to exceed the word limit imposed on motions. Word limits do not apply to § 2255 motions. *See* D. Mont. L.R. 7.1(a) (Mar. 1, 2016). The Court has reviewed everything Lawrence filed.

**A. Double Jeopardy**

Lawrence claims counsel should have moved to dismiss the strangulation charges in Counts 1 and 3, as lesser included offenses of assault with intent to commit murder in Counts 2 and 4. He argues that his conduct could not violate § 113(a)(1) without also violating § 113(a)(8). *See* Mot. § 2255 (Doc. 121) at 4A; Br. in Supp. (Doc. 122) at 16-20.[1]

The victim testified that, in March 2014, Lawrence "wanted to kill me" and "asked me if I wanted it to be not painful and fast, or slow and painful." "[H]e wrapped" an electrical cord "around my neck" and "squeezed on the cord, and I couldn't breathe even at that point." 1 Trial Tr. at 52:21-56:7. This incident supported the charges in Counts 3 and 4.

The victim also testified that, in May 2014, Lawrence "punched me"

---

[1] The electronic filing system numbers each page of a document sequentially. Page numbers cited in this Order refer to the electronic numbering, not the numbers Lawrence placed at the bottom of each page.

5

"[m]ore" than "a dozen" times in the head and "four or five" times in the ribs "on each side." "[W]hen he was hitting me in my ribs I heard a pop, and that's when I knew he broke a rib." Lawrence heard the pop, too, and asked the victim, "'Do you want me to put you out of your misery?'" The victim testified that he "grabbed my neck and started strangling me." She testified that she was lying "[o]n his bed" when she "blacked out," then regained consciousness "in the hallway." The victim testified that she awoke to see Lawrence "cleaning out the bottom of that closet trying to get to the lid of that crawlspace" so that he could "dispose of me down there until he could find a place to bury me." 1 Trial Tr. at 57:11-61:5. This incident supported the charges in Counts 1 and 2.

The Double Jeopardy Clause "protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). Generally, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). The *Blockburger* test serves only "as a means of discerning congressional purpose." *Albernaz v. United States*, 450 U.S. 333, 340 (1981). A "clear indication of contrary legislative intent" will supersede the *Blockburger* test. *See Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983).

Lawrence presents the question of whether counsel acted unreasonably in failing to seek dismissal of these counts based on the theory that §§ 113(a)(1) and (a)(8) do not permit multiple punishments. *See Strickland*, 466 U.S. at 687-88. For three reasons, it was not unreasonable. The *Blockburger* test indicates that §§ 113(a)(1) and (a)(8) define two different offenses. Intent to commit murder constitutes an element of § 113(a)(1), but not of § 113(a)(8). The victim's status as a spouse or intimate partner of the defendant constitutes an element of § 113(a)(8). Section 113(a)(1) contains no similar element. Each offense requires proof of a fact the other does not. Second, courts have permitted multiple punishments under other subsections of § 113. *See, e.g.*, *United States v. Decoteau*, 642 Fed. Appx. 739, 740-41, No. 15-30067 (9th Cir. Mar. 16, 2016) (unpublished mem. disp.). Third, on its face, § 113 bears no "clear indication of contrary legislative intent" to prohibit multiple punishments.

Counsel's failure to move to dismiss counts under § 113 did not fall outside the wide range of reasonable professional assistance in light of these factors regarding multiple punishments does not qualify as unreasonable. The first prong of the *Strickland* test is not met. This claim is denied.

**B. Impeachment of the Victim**

The victim's frequent inability to remember prior statements or understand counsel's questions repeatedly frustrated counsel's attempts to impeach her with

7

prior inconsistent statements. *See, e.g.*, 2 Trial Tr. (Doc. 112) at 11:13-12:25, 14:5-17:10, 22:17-23:11, 25:2-22, 28:10-32:14. Counsel presented the alleged prior inconsistent statements to the jury. Counsel could not control how the victim responded to these questions. Lawrence contends that counsel should have introduced additional impeachment evidence. *See* Mot. § 2255 at 4B; Br. in Supp. at 21-27. He also made a related discovery request. *See* Mot. for Discovery (Doc. 121-2) at 1 ¶ 1, 3 ¶ 3 (Lawrence Decl.).

### 1. Lack of Evidence of Old Injuries

Lawrence points out that the victim called the police on June 29, 2014, a matter of weeks after more than one assault occurred. He claims counsel should have called a medical expert to testify that traces of previous injuries would be expected and should have asked the officer who saw the victim on June 29, 2014, as well as a social services worker, whether they saw any such injuries. *See* Br. in Supp. at 21-26.

The jury knew the United States possessed the burden of producing evidence sufficient to support its allegations. It also knew the United States did not present evidence that Officer Richardson or anyone else saw any physical injury. Common sense suggested physical injuries might have been apparent, so it was not unreasonable for counsel to fail to call an expert witness. The government persuaded the jury of Lawrence's guilt beyond reasonable doubt despite the lack of

8

evidence of physical injury.  No reason exists to believe that Lawrence would have been acquitted if counsel had called further attention to the lack of physical evidence.  Neither prong of the *Strickland* test is met.  This claim is denied.

### 2. Prior Report of Sexual Assault

The victim testified she met Lawrence at a party in January or February of 2012 and the first days of their relationship "were very great at first.  There were no problems.  I was happy."  1 Trial Tr. (Doc. 11) at 40:2-17.  Lawrence claims that the victim told law enforcement officers in a pretrial statement that she had been sexually assaulted at that same party in 2012 by three men, including Lawrence.  Lawrence requests production of the relevant law enforcement reports.  *See* Mot. for Discovery (Doc. 121-2) at 1.  Lawrence claims that counsel should have impeached the victim by showing the discrepancy between her trial testimony and her previous description of events at the party.  *See* Br. in Supp. at 26-27; *see also* Fed. R. Evid. 613(b).

Reasonable counsel likely would be reluctant to challenge favorable trial testimony and reluctant to elicit a previous statement that would have been unfavorable to a client, especially when other, similar impeachment evidence remained available.  For instance, Lawrence's theory is that it is simply not credible that a person who had been sexually assaulted on one day would shortly thereafter enter into a consensual dating relationship with one of the assailants.

9

The victim testified about another incident regarding a vicious assault. The victim testified that Lawrence had "stomped" on her head "over a dozen times" on one occasion. *See* 1 Trial Tr. at 71:7-73:8; 2 Trial Tr. at 32:15-21. The government put on no evidence to show that the victim suffered any lasting injury from this assault. Lawrence called several witnesses who testified that this alleged assault never happened. *See* 2 Trial Tr. at 129:24-130:10, 178:14-19. The jury found the victim credible on the central points at issue.

Witnesses refuted other statements by the victim as well. It should be noted, however, that these witnesses were Lawrence's family members or close friends. The jury properly considered potential bias in evaluating the credibility of the witnesses. *Compare, e.g.*, 2 Trial Tr. at 32:15-34:12 *with id.* at 169:14-170:11 (whether nephew and girlfriend saw physical signs of abuse and whether victim told them to jump out window with baby if Lawrence entered room); 2 Trial Tr. at 18:16-19-25 *with id.* at 153:18-154:3 (whether Lawrence bribed younger brothers to watch victim); 1 Trial Tr. at 61:22-62:22; 2 Trial Tr. at 30:15-32:14, 40:23-41:17, 43:5-45:4 *with* 2 Trial Tr. at 128:11-23, 132:11-14, 148:23-149:2, 151:17-22, 154:4-11 (whether others in house saw and deplored victim's injuries); *see also* 2 Trial Tr. at 12:5-25, 106:20-109:7, 113:9-115:13 (victim behaved erratically after calling police to Lawrence's home).

Counsel extensively impeached the victim. The jury nevertheless believed

the victim's testimony regarding Lawrence's attacks on her. No reasonable probability exists that Lawrence would have been acquitted if counsel had attempted further to impeach the victim. This claim is denied.

### C. Indian Status

Lawrence contends counsel should have moved for acquittal based on the United States's failure to prove that he was an Indian person. *See* Mot. § 2255 at 4C; Br. in Supp. at 27-33. The government introduced Lawrence's tribal enrollment certificate and other evidence sufficient to prove his status as an Indian person, even under the more demanding standard that applied at the time of the trial in January 2015. *See, e.g.*, 2 Trial Tr. at 86:20-89:16, 90:18-91:16, 95:12-19; *United States v. Maggi*, 598 F.3d 1073, 1080-81 (9th Cir. 2010), *overruled in part by United States v. Zepeda*, 792 F.3d 1103, 1106 (9th Cir. July 7, 2015) (en banc). Neither prong of the *Strickland* test is met. This claim is denied.

### D. Sentencing Issues

Lawrence contends that counsel failed to provide him with the presentence report before sentencing. Lawrence claims that his counsel realized his mistake at sentencing and began acting in the interest of saving himself from a claim of ineffective assistance of counsel rather than advocating for Lawrence. Lawrence also claims that, given time to consult with counsel, he could have presented evidence of post-traumatic stress disorder, learning disabilities, stays in mental

11

health facilities between 1999 and 2003, and a history of drug and alcohol abuse beginning at 16 years of age. *See* Mot. § 2255 at 5D; Br. in Supp. at 34-40.

Lawrence overstates the significance of the letter in which he requested a continuance of the sentencing hearing. Lawrence alleged that counsel had "failed to present me with my P.S.R. in a timely manner with just under a week till my sentencing date." Letter (Doc. 106) at 1. Lawrence suggested that he would have liked to address "some issues in my P.S.R." *Id.* Lawrence contended that he had been unable to reach counsel despite multiple attempts to contact him. *Id.* Lawrence wanted "to address these issue's before sentencing so that I may get a fair shake during sentencing." *Id.*

Lawrence brought this letter with him to the sentencing hearing. The Court asked counsel to review Lawrence's letter before allowing Lawrence to submit it. After reviewing Lawrence's letter, counsel decided to submit it as an exhibit. The Court later filed Lawrence's letter in the record of the case as Document 106.[2] The Court read and considered Lawrence's letter at the sentencing hearing. *See* Sentencing Tr. at 19:1-21:24.

Lawrence's letter indicated that he wanted more time to discuss the presentence report with counsel before sentencing. Counsel's conduct at the

---

[2] Letters and other documents received from defendants who are represented by counsel are usually filed under seal and are not visible in the public record. *See* D. Mont. L.R. CR 44.1 (Apr. 7, 2014). The Court will unseal Lawrence's letter as no need exists for the letter to remain sealed. A time-stamped version of the sentencing transcript, *see* Lawrence Decl. (Doc. 121-2) at 2 ¶ 11, would not prove anything of importance.

sentencing hearing demonstrates that counsel took seriously Lawrence's concerns. *See id.* Lawrence's failure to obtain a continuance does not mean that his counsel abandoned him. Lawrence's allegations in his letter do not render counsel's performance unreasonable.

The U.S. Probation Office provided the draft presentence report to the counsel for both parties on March 13, 2015. *See* Order (Doc. 87) at 1 ¶ 3. The draft report represents a step in process before it becomes a final product. No reason exists to suppose that counsel had been untruthful when he represented to the Court that he had discussed the presentence report with Lawrence. *See* Sentencing Tr. at 3:24-4:3. Similarly, it appears that Lawrence raised legitimate concerns about his timely receipt of the presentence report. *See* Letter (Doc. 106) at 1. Lawrence's allegations, on their own, fail to meet the first prong of the *Strickland* test.

As to potential prejudice, the presentence report contains clear indications that Lawrence suffers from significant mental and emotional health issues. In fact, Lawrence's special conditions of supervision after his release from custody seek to assist him in recognizing and coming to terms with the issues that he believes counsel should have presented at the sentencing hearing. *See* Presentence Report ¶¶ 116-125; Judgment (Doc. 102) at 5 ¶¶ 1-5.

Lawrence complains that the Court imposed the statutory maximum

13

sentence. *See* Br. in Supp. at 39. Life in prison actually represented the maximum sentence on Counts 6 and 7. *See* 18 U.S.C. § 2241(a)(1). The government vigorously advocated for a life sentence. *See* U.S. Sent. Mem. (Doc. 93) at 2, 7; Sentencing Tr. at 25:4-32:5. Lawrence's designation as a career offender had no effect on the advisory guideline range. The guideline range remained just as high without the career offender designation. Counsel obtained at least a ten-year downward variance to a total sentence of 20 years, based in part, it appears, on the Court's concern with Lawrence's struggles with mental health. *See* Presentence Report ¶¶ 134-138.

No reasonable probability exists that a more detailed or nuanced documentation of Lawrence's personal issues already known to the Court would have resulted in a sentence of less than 20 years. Lawrence's allegations fail to meet the second prong of the *Strickland* test.

## IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues

presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

The law at the time does not appear to have supported Lawrence's double jeopardy argument. Counsel nevertheless could be faulted for not attempting to raise the issue. But neither prong of the *Strickland* test is met by Lawrence's allegations regarding counsel's attempted impeachment of the victim. Counsel presented to the jury the lack of physical evidence of the victim's claimed injuries. Counsel also impeached the victim's credibility on several points by calling witnesses who contradicted the victim's version of several alleged assaults. The government adequately proved Lawrence status as an Indian person even under the more stringent test that applied at the time of trial. Finally, Lawrence alleges that counsel could have presented additional mitigating evidence at sentencing, but he does not identify anything unreasonable about counsel's performance. No reason exists to believe that the Court would have imposed a sentence of less than 20 years in light of Lawrence's advisory guideline range was 360 months to life and the vigorous efforts by the government to obtain a sentence of life in prison.

Reasonable jurists could disagree regarding Lawrence's double jeopardy claims. A COA is not warranted with regard to any other claims.

Accordingly, IT IS HEREBY ORDERED as follows:

1. The clerk shall open Document 106 to remote public access and provide a copy to Lawrence with his service copy of this Order.

2. Lawrence's motions to exceed page limits and for discovery (Docs. 121-1, 121-2) are MOOT.

3. Lawrence's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Docs. 121, 122) is DENIED.

4. A certificate of appealability is GRANTED with regard to Lawrence's double jeopardy claim. A certificate of appealability is DENIED with regard to all other claims. The clerk shall immediately process the appeal if Lawrence files a Notice of Appeal.

5. The clerk shall ensure that all pending motions in this case and in CV 17-101-GF-BMM are terminated and shall close the civil file by entering judgment in favor of the United States and against Lawrence.

DATED this 6th day of June, 2018.

_____
Brian Morris
United States District Court Judge